UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-cr-80110-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ERNESTO VAZQUEZ,

    Defendant.
    _____/

## ORDER

**THIS CAUSE** is before the Court upon Defendant Ernesto Vazquez's ("Defendant") Motion for Compassionate Release Resentencing and Request for Home Confinement, ECF No. [318] ("Motion"). The Government filed a Response in Opposition, ECF No. [323] ("Response"), to which Defendant replied, ECF No. [327] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

### I. BACKGROUND

On November 7, 2014, Defendant pled guilty to one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(A), and § 846. ECF No. [154]. On May 13, 2015, this Court sentenced Defendant to a total term of imprisonment of 120 months, followed by a three-year term of supervised release. ECF No. [275]. Defendant is currently housed at FCI Miami in Miami, Florida, and is scheduled to be released from custody in December 30, 2022.

Defendant now files the instant Motion requesting compassionate release due to the

ongoing COVID-19 pandemic, arguing that his underlying medical conditions — namely, congenital anomalies of his kidney and urinary tract and the existence of what appears to be a mass in his right kidney — put him at an increased risk of contracting a severe case of the virus. As such, Defendant requests that this Court modify his sentence to supervised release with home confinement as a special condition. The Government, however, opposes the relief Defendant requests, and argues that compassionate release is inappropriate in this case because Defendant has not shown extraordinary or compelling circumstances and because his immigration status is fatal to his request for release.

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting more confirmed cases of COVID-19 and resulting deaths than any other country, with close to 9,200,000 confirmed cases and over 230,300 reported deaths as of November 2, 2020.[1] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home

---

[1] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Nov. 2, 2020).

confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The Attorney General makes the express finding that extant emergency conditions are materially affecting BOP functioning and directs the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II. DISCUSSION

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v.*

*Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Here, Defendant seeks relief under the compassionate release provision, 18 U.S.C. § 3582(c)(1)(A), which provides:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
>     (i) extraordinary and compelling reasons warrant such a reduction . . . .
>     . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Under the relevant Sentencing Guidelines policy statement, the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The Sentencing Guidelines add that the Court should reduce a sentence only if the "defendant is not a danger to the safety of any other person or to the community." *Id.*

> Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, No. 09-60184-CR, 2020 WL 1865771, at *2 (S.D. Fla. Apr. 14, 2020). Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

As an initial matter, the Court recognizes that Defendant has exhausted his administrative remedies because he submitted his request for compassionate release to the BOP on August 13, 2020, and he has not received an answer in over thirty days. The Government concedes that exhaustion is satisfied here. ECF No. [323] at 6. Nevertheless, as explained below, Defendant's Motion fails to demonstrate the existence of extraordinary and compelling circumstances that would warrant release in this case.

With regard to the "extraordinary and compelling reasons" test, Defendant explains that he

5

is forty-four years old and he is particularly vulnerable to the risk of contracting COVID-19 because he has congenital anomalies of his kidney and urinary tract and a possible mass on his right kidney that could result in life threatening complications such as kidney failure, end-stage renal disease, and/or kidney cancer. In its Response, the Government argues that these conditions are being actively and effectively managed within the BOP's medical facilities and are therefore not extraordinary or compelling for the purposes of compassionate release.

CDC guidance indicates that individuals with chronic kidney disease are at an increased risk of severe illness from COVID-19.[2] While the Court is sympathetic to Defendant's health conditions and his concerns regarding COVID-19 outbreaks in prison facilities, it notes that Defendant's congenital anomalies on their own are not sufficient to establish the existence of the CDC risk factor regarding chronic kidney disease. Further, Defendant does not allege that his health conditions are significantly deteriorating, but rather argues that the BOP's delay in scheduling the recommended renal CT scan evidences a total failure of care on the part of the BOP. This argument, however, seemingly ignores the history of ongoing treatment to address Defendant's kidney issues. *See* ECF No. [320-1] at 11-12, 31, 35 (detailing the renal ultrasound conducted after Defendant complained of pain in his flank/abdomen); *id.* at 29 (diagnostic radiologist report on Defendant's renal ultrasound, indicating the abnormality of his right kidney, noting the possibility of a renal mass, and recommending a CT examination of the abdomen); ECF No. [325-1] at 46 (explaining Defendant's history of complaints of renal pain, and resulting course of treatment, spanning from August 2015 to present). Upon a review of Defendant's medical

---

[2] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated Nov. 2, 2020).

records, the Court agrees with the Government that his conditions are currently being effectively managed at FCI Miami.

Moreover, although Defendant's Reply is entirely devoid of any attempt to address this argument, the Court finds the Government's contention that compassionate release is not warranted here because Defendant is a foreign national who is subject to deportation and removal upon his release to be of merit. Notably, Defendant's plea agreement explicitly warned of the immigration consequences that Defendant might face upon pleading guilty to the charged offense.[3] Likewise, the Court specifically imposed special conditions of supervision, which included mandating compliance with the following term:

> At the completion of the defendant's term of imprisonment, the defendant shall be surrendered to the custody of the U.S. Immigration and Customs Enforcement [ICE] for removal proceedings consistent with the Immigration and Nationality Act. If removed, the defendant shall not reenter the United States without the prior written permission of the Undersecretary for Border and Transportation Security. The term of supervised release shall be non-reporting while the defendant is residing outside the United States. If the defendant reenters the United States within the term of supervised release, the defendant is to report to the nearest U.S. Probation Office within 72 hours of the defendant's arrival.

ECF No. [276] at 4. Thus, as the Government notes, even if the Court were to grant the instant Motion, Defendant could not be released to home confinement, but would be transported into ICE custody during the pendency of the removal proceedings. *See United States v. Camacho-Duque*, No. 18-80238-CR, 2020 WL 5951340, at *7 (S.D. Fla. Oct. 5, 2020) ("[R]elease from BOP

---

[3] *See* ECF No. [154] at 4 ("The defendant further acknowledges and recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable (that is, deportable) offenses, which includes the offense to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. Defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the defendant's plea may entail, even if the consequence is the defendant's removal from the United States.").

custody, in Defendant's case, does not mean release from government custody. Because Defendant is subject to an immigration 'hold' or detainer, upon execution of this Order, the BOP will surrender Defendant to ICE. From that point forward, Defendant, having been convicted of an 'aggravated felony' within the meaning of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(B), will be subject to mandatory, indefinite detention—that is, detention until she either prevails on her claim for relief or is deported from the United States.").

Additionally, and equally important, releasing Defendant into ICE custody would likely be harmful to Defendant's interests in securing proper medical care for his medical issues. "Were the Court to grant Defendant compassionate release, he may end up leaving [FCI Miami] only to enter an immigration facility that is less equipped to address his medical needs, and where he is no less exposed to [COVID-19]." *United States v. Perez Solorio*, No. 3:11-CR-138-J-32JRK, 2020 WL 6292558, at *2 (M.D. Fla. Oct. 27, 2020). "Given that [Defendant] is currently housed at an institution designed to provide extensive medical care to inmates," and considering the course of treatment Defendant has already received at FCI Miami to date for his medical issues, the Court is reluctant to grant release into circumstances that would likely place Defendant at greater medical risk. *United States v. Sandoval*, No. CR14-5105RBL, 2020 WL 3077152, at *5 (W.D. Wash. June 10, 2020); *see also United States v. Joaseus*, No. 9:16-CR-80011, 2020 WL 3895087, at *2 (S.D. Fla. July 10, 2020) (noting that, upon completion of the term of imprisonment, the defendant will be surrendered to ICE custody to await removal proceedings and will likely be held at an immigration detention facility, which, "like prisons, have had confirmed cases of COVID-19 and are implementing measures to respond to the spread of the disease in their populations," and concluding that a sentence reduction was unwarranted because the defendant presented no indication that was a lesser likelihood of exposure to COVID-19 at an immigration detention

facility than at a BOP facility); *see also United States v. Chavez*, No. 1:95-CR-00361, 2020 WL 2322917, at *2 (S.D. Fla. May 11, 2020) (same).[4]

In sum, the Court is unpersuaded that Defendant has presented sufficient extraordinary and compelling circumstances to warrant compassionate release.[5] As such, Defendant's Motion is denied.

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion, **ECF No. [318]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 3, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of record

---

[4] *See also Matos v. Lopez Vega*, No. 20-cv-60784, 2020 WL 2298775, at *9 (S.D. Fla. May 6, 2020) (discussing the allegedly inadequate conditions at ICE facilities during COVID-19); *Gayle v. Meade*, No. 20-21553-CIV, 2020 WL 2086482, at *4 (S.D. Fla. Apr. 30, 2020) (detailing the ways in which ICE has failed in its duty to protect the safety and general well-being of detainees at immigration detention centers), *order clarified*, No. 20-21553-CIV, 2020 WL 2203576 (S.D. Fla. May 2, 2020); *Fraihat v. U.S. Immigration & Customs Enf't*, 445 F. Supp. 3d 709, 719 (C.D. Cal. 2020) (describing ICE's failure to ensure minimum lawful conditions of confinement at immigration detention facilities across the country).

[5] Because Defendant's Motion fails to establish any extraordinary and compelling circumstances warranting his release, the Court does not need to address the two remaining compassionate release considerations under § 3553(a) and § 3142(g).